**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STELA CARAMAN<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A",<br><br>Defendants. | Civil Action No. 2:26-cv-1510<br><br>JURY TRIAL DEMANDED<br><br>FILED UNDER SEAL |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff Stela Caraman, an individual, hereby sues Defendants, the Partnerships and Unincorporated Associations identified in **Schedule "A"** hereto (collectively "Defendants"). Defendants have offered for sale, sold, and distributed knock-off and infringing versions of Plaintiff's copyrighted "Ornament Christmas Bundle" within this district and throughout the United States.  Defendants sell Infringing Products via Amazon.com, and Walmart.com and other online marketplaces using the Store Names and Seller Names set forth on **Schedule "A"** hereto (collectively, the "Seller IDs") ("Infringing or Knock-Off Product(s)"). As set forth below, Defendants are using without authorization Plaintiff's copyrighted images ("Plaintiff's Work"), more specifically, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale and/or selling unlicensed and infringing versions of Plaintiff's Product. In support of its claims, Plaintiff alleges as follow:

**NATURE OF THE ACTION**

1.    Plaintiff created and designed the work titled Ornament Christmas Bundle, described as Generic ███████████████████████████████████

1

████████████████████████████████████████████████████████████,

which was registered as U.S. Copyright Registration ██████████.

2.      Plaintiff is the registered owner of U.S. Copyright Registration ██████████ ███████████████████████, which covers the original work of authorship titled Ornament Christmas Bundle that has been infringed in this action.

3.      Plaintiff has entirely created and innovated the products, product packaging, and advertising materials. This is a costly effort involving graphic design, industrial design and tooling. It takes time to create, design, test, redesign and retest prototypes. Products are introduced to retailers via trade shows across the world. This introduction process costs substantial money, but offers a chance to show customers the quality and use of the product. Genuine goods comprising Plaintiff's Work (as defined below) are widely advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet. Over the past several years, visibility on the Internet, particularly via Internet search engines has become increasing important to Plaintiff's overall marketing.

4.      Defendants' sale, distribution, and advertising of the Infringing Products are highly likely to cause consumers to believe that Defendants are offering genuine versions of Plaintiff's Product when in fact they are not. To illustrate, below are several examples which vividly show that the Infringing Products itself and the manner in which it is marketed is designed to confuse and mislead consumers into believing that they are purchasing Plaintiff's Product or that the Infringing Products are otherwise approved by or sourced from Plaintiff:

5.

2

| Plaintiff's Copyrighted Work | Defendants' Infringing Products |
|---|---|



Additional photographic comparisons of Plaintiff's Product and the Infringing Products are attached as **Exhibit 4**.

6.      As poorly designed and manufactured products, there is a risk of injury and disappointment from the confused customers.

7.       The Infringing Products threaten to destroy the reputation of high quality that Plaintiff's Products have earned.

8.      As noted, Plaintiff holds U.S. Copyright Registration No. ▮▮▮▮▮ covering Ornament Christmas Bundle ("Plaintiff's Work"). A copy of the copyright registration certificate is attached to the Complaint as Exhibit 1.

9.      On information and belief, Defendants' sale of Infringing Products gives rise to a plausible expectation that discovery will reveal that Defendants' actions all arise from the same transaction, occurrence, or series of transactions. Specifically, on information and belief, Defendants are actively participating in a conspiracy to distribute and sell Infringing Products. For example, Defendants, on information and belief, are working together to manufacture, arrange the manufacture of and/or sell and otherwise distribute the Infringing Products.

3

Moreover, the Infringing Products share similar characteristics including, for example, colors, size, and design.

10.    Plaintiff therefore brings this action for federal copyright infringement pursuant to 17 U.S.C. § 501(a), *et seq*.

**JURISDICTION AND VENUE**

11.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§ 1331, 1332, and 1338.

12.    This Court may exercise personal jurisdiction over a non-resident of the State in which the Court sits to the extent authorized by the state's laws. Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to 42 Pa. Cons. Stat. § 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph:

(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit

\*\*\*

(3) Causing harm or tortious injury by an act or omission in this Commonwealth.

(4) Causing harm or tortious injury by an act or omission outside this Commonwealth

\*\*\*

(10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of

4

court or other government unit." In the alternative, Federal Rule of Civil Procedure 4(k) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Pennsylvania and in this judicial district, and/or derive substantial revenue from their business transactions in Pennsylvania and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions off airplay and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district, for example:

a.      Upon information and belief, at all times relevant hereto, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through on-line platforms with Merchant Storefronts (as defined *infra*), via on-line marketplace websites, like Amazon.com, and Walmart.com, under the Seller IDs, as well as any and all as yet undiscovered accounts with Merchant Storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Accounts"), through which consumers in the United States, including Pennsylvania, can view the one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including Pennsylvania,

5

as a means for establishing regular business with the U. S., including Pennsylvania.

b.        Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses using their respective User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("Merchant Storefront(s)") in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

c.        Upon information and belief, Defendants' Merchant Storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

d.        Upon information and belief, all Defendants accept payment in U.S. Dollars, collect and pay Pennsylvania sales tax, and offer shipping to the U.S., including to Pennsylvania.

e.        Upon information and belief, at all times relevant, Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment Infringing Products.

f.        Upon information and belief, Defendants are employing and benefiting from substantially similar, paid advertising and marketing and advertising strategies in order to make their Merchant Storefronts selling illegal goods appear more relevant and attractive to search

6

result software across an array of search words, including but not limited to Plaintiff's Work .By their actions, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within the various on-line marketplace search results and reducing the   visibility of the Plaintiff's genuine copyrighted images on various on-line marketplaces and/or diluting and driving down the retail market price for the and (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's works and goods.

g.      Upon information and belief, via one or more online chat rooms,  and other communications methods, (1) Defendants monitor various lawsuits against counterfeiting and infringing, (2) Defendants consult with legal counsel to defend their illegal activities, and (3) Defendants have cooperated, communicated their plans with one another, shared information, and coordinated their efforts, all in order to create an illegal marketplace operating in parallel to the legitimate marketplace of Plaintiff's and the legally authorized resellers of Plaintiff's genuine goods.

h.      Upon information and belief, Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Allegheny County, Pennsylvania.

i.      Upon information and belief, many Defendants likely reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax trademark and patent enforcement systems and are cooperating by creating an illegal stream of infringing goods.

j.      Upon information and belief, Defendants are aware of Plaintiff's Product, and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiff

conducts substantial business in Pennsylvania.

k.      Plaintiff is suffering irreparable and indivisible injury and suffered substantial damages as a result of Defendants' unauthorized and wrongful sale of counterfeit and infringing good.

13.     Venue is proper, inter alia, pursuant to 28 U.S.C. § 1391 and 28 U.S.C. §§ 1400(a) and (b) because, for example:

a. Upon information and belief, Defendants, conduct, transact, and/or solicit business in this judicial district.

b. Upon information and belief, Defendants or their agent(s) may be found in this district because personal jurisdiction is proper in this district.

c. Upon information and belief, this is a judicial district in which a substantial part of the events or omissions giving rise to the infringement claims occurred, or a substantial part of the property that is the subject of the action is situated.

d. Defendants not resident in the United States may be sued in this judicial district because personal jurisdiction is proper in this district.

## PLAINTIFF

14.     Stela Caraman is a Romania-based creator with an address at Str G-ral Ion Dragalina, Cluj-Napoca, Cluj, Romania.

15.     Stela Caraman is the author, copyright claimant, and sole owner of all right, title, and interest in United States Copyright Registration No. ████████ titled Ornament Christmas Bundle (the "Asserted Copyright").

16.     No license or other rights to the Asserted Copyright have been granted to any Defendant in this action.

17.     Defendants, through the sale and offer to sell Infringing Products are directly,

8

and unfairly competing with Plaintiff's economic interest in the Commonwealth of Pennsylvania and causing Plaintiff harm within this jurisdiction.

18. Like many other copyright owners, Plaintiff suffers ongoing daily and sustained violations of its rights at the hands of infringers, such as Defendants herein, who wrongfully reproduce Plaintiff's Products for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits from the sale of their Infringing Products. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's Products and the destruction of the legitimate market sector in which Plaintiff operate.

19. The recent explosion of counterfeiting and infringement over the Internet, including through online marketplace platforms, has created an environment that requires copyright owner, such as Plaintiff, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and Plaintiff from the ill effects of confusion and the erosion of the goodwill associated with Plaintiff's products.

## DEFENDANTS

20. The Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside or operate in foreign jurisdictions, or (though not foreign) redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, and conduct pervasive business through the operation of, at least, one fully interactive commercial Internet based e-commerce store via, at least, the Internet based online marketplaces, Amazon.com, Walmart.com, and Alibaba.com under the Seller IDs.

21. Defendants use aliases in conjunction with the operation of their businesses,

including but not limited to those as set forth in **Schedule "A"** hereto.

22.     Defendants are the past and present controlling forces behind the sale of products bearing and/or using infringements of the Plaintiff's Work, and/or a substantially similar copy of Plaintiff's Work as described herein using at least the Seller IDs.

23.     Upon information and belief, Defendants directly engage in using infringements of the Plaintiff's Work, to consumers within the United States and this district through several fully interactive, commercial Internet websites and Internet based e-commerce stores operating under, at least, the storefronts, the Seller IDs, and any additional domain names, websites and corresponding website URLs or seller identifications and store URL aliases not yet known to Plaintiff. Defendants have purposefully directed some portion of their illegal activities towards consumers in the Commonwealth of Pennsylvania through the advertisement, offer to sell, sale, and/or shipment of Infringing Products into the Commonwealth.

24.     Defendants have registered, established or purchased, and maintained the online marketplace website storefronts and Seller IDs. Upon information and belief, Defendants have engaged in fraudulent conduct with respect to the registration of the storefronts and Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms where they offer for sale and/or sell, during the registration or maintenance process related to their respective Seller ID. Upon information and belief, Defendants have anonymously registered and maintained some of the Seller IDs for the sole purpose of engaging in illegal infringing activities.

25.     Defendants have registered, established or purchased, and maintained the online marketplace website storefronts and Seller IDs. Upon information and belief, Defendants have engaged in fraudulent conduct with respect to the registration of the storefronts and Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms where they offer for sale and/or sell, during the registration or maintenance process related to

their respective Seller ID. Upon information and belief, Defendants have anonymously registered and maintained some of the Seller IDs for the sole purpose of engaging in illegal infringing activities.

26.    Upon information and belief, Defendants will continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale goods bearing and/or using confusingly similar imitations of Plaintiff's Work unless preliminarily and permanently enjoined.

## COMMON FACTUAL ALLEGATIONS

27.    The Plaintiff's Work has never been assigned or licensed to any of the Defendants in this matter.

28.    Plaintiff's Work is a symbol of Plaintiff's quality, reputation, and goodwill and has never been abandoned.

29.    Genuine goods bearing the Plaintiff's Work are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet. Over the past several years, visibility on the Internet, particularly via Internet search engines has become increasing important to Plaintiff's overall marketing. Thus, Plaintiff and its authorized distributors expend significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Those strategies allow Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's brand and the goods sold there under. Similarly, Defendants' individual seller's stores are indexed on search engines and compete directly with Plaintiff for space in the search results.

## DEFENDANTS' UNFAIR AND DECEPTIVE CONDUCT

30.    Upon information and belief, Defendants are, through at least the Internet based e-commerce stores operating under the Seller IDs, promoting, selling, offering for sale and

distributing goods bearing and/or using confusingly similar imitations of the Plaintiff's Work, or substantially similar copies of Plaintiff's Work, while marketing Infringing Products in a willful attempt to pass off their knock-off products as genuine versions of Plaintiff's Products.

31.    E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. Declaration of Attorney Xiyan Zhang ("Zhang Decl.")[1], Exhibit 1, Excerpts from Fiscal Year 2021 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 89% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). Id. More than half (51%) of CBP seizures originated from mainland China and Hong Kong. Id. Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

32.    Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." *Id.,* Exhibit 2, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as *Zhang Decl.,* Exhibit 3, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "significantly enhanced vetting of third-party sellers" is necessary.

---

[1] Referring to the Declaration of Xiyan Zhang in Support of Temporary Restraining Order, filed herewith.

Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. *Zhang Decl.,* Exhibit 3**,** atp. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. *Zhang Decl.,* Exhibit 3, atp. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping designers to locate or identify sources of counterfeits and counterfeiters." *Zhang Decl.,* Exhibit 2, at 186-187.

33. Upon information and belief, Defendants did not obtain an opinion from United States Counsel about the legality of offering for sale each of the Infringing Products.

34. Upon information and belief, Defendants' Infringing Products are of a quality substantially and materially different than that of Plaintiff's genuine goods. Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of their Infringing Products with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiff despite Defendants' knowledge that they are without authority to use the Plaintiff's Work. The net effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Infringing Products are genuine goods originating from, associated with, and approved by Plaintiff.

35. Defendants advertise their Infringing Products for sale to the consuming public via Internet based e-commerce stores on, at least, one Internet marketplace using at least the Seller IDs. In so advertising these goods, Defendants improperly and unlawfully use the Plaintiff's Work, or substantially similar copies of Plaintiff's Work without Plaintiff's permission.

36.    As part of their overall infringement scheme, Defendants are, upon information and belief, concurrently employing and benefiting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of infringements of the Plaintiff's Work. Specifically, Defendants are using infringements of Plaintiff's rights in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods. Defendants are causing, individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Plaintiff's rights, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand via the Internet.

37.    Defendants are concurrently targeting their infringing activities toward consumers and causing harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

38.    Plaintiff confirmed that Defendants were and/or are still currently offering for sale and/or selling Infringing Products for sale to the consuming public via Internet based e-commerce stores on, at least, one Internet marketplace using at least the Seller IDs and that Defendants provide shipping and/or have actually shipped Infringing Products to customers located within this judicial district. *See* **Exhibit 3.**

39.    There is no question that the Infringing Products themselves and the manner in which they are marketed is designed to confuse and mislead consumers into believing that they are purchasing Plaintiff's Product or that the Infringing Products are otherwise approved by or

sourced from Plaintiff, thereby trading on the goodwill and reputation of Plaintiff by engaging in the unauthorized use of Plaintiff's Work, or substantially similar copies of Plaintiff's Work.

40.    At all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the Plaintiff's Work, including its exclusive right to use and license such intellectual property and the goodwill associated there with.

41.    Defendants' use of Plaintiff's Work, and/or substantially similar copies of Plaintiff's Work, including the promotion and advertisement, reproduction, distribution, sale, and offering for sale of their Infringing Products, is without Plaintiff's consent or authorization.

42.    Defendants are engaging in the above-described illegal infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation. If Defendants' intentional infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

43.    Defendants above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's Work and Defendants' Infringing Products, which there is not.

44.    Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' infringing and unfairly competitive activities connected to their Seller IDs and any other alias e-commerce stores, photo albums, seller identification names, domain names, or websites being used and/or controlled by them.

45.    Further, upon information and belief, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiff.

46.    Plaintiff has no adequate remedy at law.

47.     Plaintiff is suffering irreparable injury and have suffered substantial damages as a result of Defendants' unauthorized and wrongful use of Plaintiff's Work, and/or substantially similar copies of Plaintiff's Work. If Defendants' infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

48.     The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Infringing Products.

**The Scope of Defendants' Activities**

49.     Upon information and belief, each Defendant operates more than one merchant storefront.

50.      Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

**COUNT I - FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))**

51.     All the above paragraphs are incorporated herein by reference.

52.     Plaintiff is the exclusive owner and licensor of Plaintiff's Work.

53.     Defendants had actual notice of Plaintiff's exclusive rights in and to the Plaintiff's Work.

54.     Defendants did not attempt and therefore inherently failed to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market Plaintiff's Work.

55.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

56.     Without permission, Defendants knowingly and intentionally reproduced,

16

copied, and displayed the Plaintiff's Work by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling products that utilize features that are, at a minimum, substantially similar to the Plaintiff's Work.

57.     Defendants' unlawful and willful action as alleged herein constitute infringement of the Plaintiff's Work, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such Work in violation of 17 U.S.C. § 501(a).

58.     Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiff in an amount as yet unknown but to be proven at trial, for which Plaintiff has no adequate remedy at law, and unless enjoined, Defendants will continue to cause substantial and irreparable harm to Plaintiff. Plaintiff is entitled to injunctive relief, Plaintiff's actual damages and Defendants' profits in an amount to be proven at trial, enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

A. Entry of temporary, preliminary and permanent injunctions pursuant to 17 U.S.C. § 502, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Knock-Off Products; from infringing the Plaintiff's Work; from using the Plaintiff's Work in connection with the sale of any unauthorized goods; from using any work that maybe calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in anyway associated with Plaintiff;

17

from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Plaintiff's Work in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from engaging in search engine optimization strategies using colorable imitations of the Plaintiff's Work; from further infringement, or from otherwise unfairly competing with Plaintiff.

B.  Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators that are provided with notice of the injunction, including but not limited to the online marketplaces hosted by Amazon.com, Walmart.com, and Alibaba.com disable and/or cease facilitating access to the Seller IDs, and any other alias e-commerce stores being used and/or controlled by Defendants to engage in the marketing, promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits and/or infringements of the Plaintiff's Work.

C.  Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to online marketplaces hosted by, Amazon.com, and Walmart.com permanently remove from multiple platforms, which include, *inter* alia, a Direct platform, Group platform, Seller Product Management platform, Vendor Product Management platform, and Brand Registry platform, any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of the Plaintiff's Work, via the e-commerce stores operating under the Seller IDs on Schedule "A" hereto, and upon Plaintiff's request, any other listings and images of goods bearing and/or using counterfeits and/or

infringements of the Plaintiff's Work linked to the same seller or linked to any other alias seller identification name being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using infringements of the Plaintiff's Work.

D. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to online marketplaces hosted by Amazon.com, Walmart.com, and Alibaba.com immediately cease fulfillment of and sequester all goods of each Defendant or other Seller under a Seller ID bearing and/or using Plaintiff's Work in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

E. Entry of an Order pursuant to 28 U.S.C. § 1651(a), the All Writs Act, that upon Plaintiff's request, any messaging service and Internet marketplace, social media, and image hosting website operators and/or administrators for the Seller IDs who are provided with notice of the injunction, including but not limited to operators and/or administrators of Amazon.com, and Walmart.com, identify any e- mail address known to be associated with Defendants' respective Seller IDs.

F. Entry of an order pursuant to 28 U.S.C. § 1651(a), the All-Writs Act, and the Court's inherent authority, authorizing Plaintiff to serve the injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail address that used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods bearing and/or using infringements of the Plaintiff's Work or otherwise unfairly competing with Plaintiff.

G. For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright

19

infringement of the Plaintiff's Work under § 501(a).

H.  In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement of the Plaintiff's Work pursuant to 17 U.S.C. § 504(b), for statutory damages of $150,000.00 per infringement pursuant to 17 U.S.C. § 504(c) for willful copyright infringement, which Plaintiff may elect prior to rendering of final judgment, together with Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

I.  Entry of an Order that, upon Plaintiff's request, any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other domain names, alias seller identification names, or e-commerce store names or store URLs used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

J.  Entry of an award of pre-judgment interest on the judgment amount.

K.  Entry of an order for any further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

20

Dated: July 14, 2026                         Respectfully submitted,

                                             By: /s/ Xiyan Zhang
                                                 Xiyan Zhang
                                                 Stratum Law LLC
                                                 18 Campus Blvd. Ste. 100
                                                 Newtown Square, PA 19073
                                                 Phone# (215) 395-8756
                                                 Bar# 5052642
                                                 xzhang@stratumlaw.com
                                                 *Counsel for Plaintiff*